1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11  MADLYN M. TIBBS,                    )  Case No. CV 07-4267 JC
                                        )
12              Plaintiff,              )
                                        )  MEMORANDUM OPINION
13       v.                             )
                                        )
14                                      )
    MICHAEL J. ASTRUE,                  )
15  Commissioner of Social              )
    Security,                           )
16                                      )
                Defendant.              )
17  _____  )

18  **I.    SUMMARY**

19       On July 2, 2007, plaintiff Madlyn M. Tibbs ("plaintiff") filed a Complaint

20  seeking review of the Commissioner of Social Security's denial of plaintiff's

21  application for benefits. The parties have filed a consent to proceed before a

22  United States Magistrate Judge.

23       This matter is before the Court on the parties' cross motions for summary

24  judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion"). The

25  Court has taken both motions under submission without oral argument. See Fed.

26  R. Civ. P. 78; L.R. 7-15; July 3, 2007 Case Management Order ¶ 5.

27  ///

28  ///

1  Based on the record as a whole and the applicable law, the decision of the

2  Commissioner is AFFIRMED.  The decision of the Administrative Law Judge

3  ("ALJ") is supported by substantial evidence and is free from material error.[1]

4  **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5  **DECISION**

6  On July 28-29, 2004, plaintiff filed applications for supplemental security

7  income benefits and disability insurance benefits.  (Administrative Record ("AR")

8  74-81).  Plaintiff asserted that she became disabled on May 12, 2004, due to

9  irreversible brain damage.  (AR 74, 78, 117).  The ALJ examined the medical

10  record and heard testimony from plaintiff (who was represented by counsel) and a

11  vocational expert on June 29, 2006.  (AR 13, 334-81).

12  On October 27, 2006, the ALJ determined that plaintiff was not disabled

13  through the date of the decision.  (AR 13-33).  Specifically, the ALJ found:

14  (1) plaintiff suffered from the severe impairment of hypoxic brain damage (AR 14,

15  32); (2) plaintiff's impairment did not meet or medically equal one of the listed

16  impairments (AR 14, 32); (3) plaintiff retained the residual functional to mentally

17  understand, carry out and remember short and simplistic instructions, to make

18  simplistic work-related decisions without special supervision, and to interact

19  appropriately with supervision, co-workers and peers (AR 32); (4) plaintiff had no

20  exertional limitations (AR 33); (5) plaintiff could not perform her past relevant

21  work (AR 26, 33); (6) plaintiff could perform other work that exists in significant

22  numbers in the national economy (AR 27, 33); and (7) plaintiff's allegations

23  regarding her limitations were not totally credible.  (AR 15-17, 32).

24  ///

25

26  [1]The harmless error rule applies to the review of administrative decisions regarding

27  disability.  See Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1196
(9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, Social

28  Security Administration, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of
application of harmless error standard in social security cases).

Plaintiff sought review of the ALJ's decision and submitted additional materials for consideration by the Appeals Counsel.  (AR 8, 332-33).  The Appeals Council denied plaintiff's application for review.  (AR 5-8).

**III.   APPLICABLE LEGAL STANDARDS**

    **A.   Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

    (1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

    (2)    Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

    (3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

///
///
///

3

<blockquote>

(4)    Does the claimant possess the residual functional capacity to perform her past relevant work?[2]  If so, the claimant is not disabled.  If not, proceed to step five.

(5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

</blockquote>

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citing Tackett); see also Burch, 400 F.3d at 679 (claimant carries initial burden of proving disability).

**B.    Standard of Review**

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

///

----

[2]Residual functional capacity is "what [one] can still do despite [ones] limitations" and represents an "assessment based upon all of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

4

1  To determine whether substantial evidence supports a finding, a court must
2  "'consider the record as a whole, weighing both evidence that supports and
3  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>
4  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d
5  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming
6  or reversing the ALJ's conclusion, a court may not substitute its judgment for that
7  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

8  **IV.   DISCUSSION**

9      **A.     The ALJ's Residual Functional Capacity Determination Is**
10         **Supported By Substantial Evidence**

11 Plaintiff argues that the ALJ's assessment of plaintiff's residual functional
12 capacity is defective because, <u>inter alia</u>, it is not supported by substantial evidence
13 in the record.  This Court disagrees.

14 As noted above, the ALJ found that plaintiff had no exertional limitations
15 and had the residual functional capacity to "mentally understand, carry out and
16 remember short and simplistic instructions, make simplistic work-related decisions
17 without special supervision, and interact appropriately with supervision, co-
18 workers and peers."  (AR 32, 33).  Based upon a review of the record as a whole,
19 these findings are supported by substantial evidence.

20 On February 24, 2005, neurologist Sarah Maze, M.D. conducted a
21 neurological evaluation of plaintiff.  (AR 252-56).  As part of the evaluation, Dr.
22 Maze interviewed plaintiff, reviewed plaintiff's medical records and conducted a
23 neurological examination that included multiple tests.  (AR 252-56).  Dr. Maze
24 determined plaintiff was "able to lift and carry without restriction," and would be
25 able to "stand, sit, and walk for six hours of an 8-hour workday" and "perform fine
26 motor activities with all extremities."  (AR 256).  The ALJ properly relied on Dr.
27 Maze's determinations in finding that plaintiff has no exertional limitations.  (AR
28 ///

5

1    20, 23, 33).  As a result, the ALJ's determination regarding plaintiff's exertional

2    limitations is supported by substantial evidence.  Robbins, 466 F.3d at 882.

3         On September 24, 2004, psychologist Rosa Colonna, Ph.D, conducted a

4    psychological evaluation of plaintiff.  (AR 227-32).  As part of the evaluation, Dr.

5    Colonna interviewed plaintiff, reviewed plaintiff's medical records and conducted

6    a mental status examination that included multiple tests.  (AR 227-32).  Dr.

7    Colonna determined plaintiff "will be able to understand, remember, and carry out

8    short and simplistic instructions without difficulty.  She presents with a slight

9    inability to understand, remember, and carry out detailed instructions.  The

10   claimant will be able to make simplistic work related decisions without special

11   supervision." (AR 231).   Dr. Colonna's opinion, upon which the ALJ relied,

12   constitutes substantial evidence to support the ALJ's assessment of plaintiff's

13   residual functional capacity.  (AR 19, 23, 32).  Robbins, 466 F.3d at 882.

14        **B.**    **The ALJ's Residual Functional Capacity Determination Is Free**

15              **From Material Error**

16              **1.**    **The ALJ Properly Considered the Opinion of Plaintiff's**

17                    **Treating Physician**

18        Plaintiff contends that the ALJ failed to give legally sufficient reasons for

19   rejecting the opinion of plaintiff's treating physician – Dr. Antoine Mitri.

20   (Plaintiff's Motion at 4-5).  This Court disagrees and finds the ALJ properly

21   considered the opinion of plaintiff's treating physician and gave legally sufficient

22   reasons for rejecting such opinion.

23                    **a.**    **Pertinent Law**

24        In Social Security cases, courts employ a hierarchy of deference to medical

25   opinions depending on the nature of the services provided.  Courts distinguish

26   among the opinions of three types of physicians:  those who treat the claimant

27   ("treating physicians") and two categories of "nontreating physicians," namely

28   those who examine but do not treat the claimant ("examining physicians") and

6

1   those who neither examine nor treat the claimant ("nonexamining physicians").

2   Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996) (footnote reference omitted).  A

3   treating physician's opinion is entitled to more weight than an examining

4   physician's opinion, and an examining physician's opinion is entitled to more

5   weight than a nonexamining physician's opinion.[3]  See id.  In general, the opinion

6   of a treating physician is entitled to greater weight than that of a non-treating

7   physician because the treating physician "is employed to cure and has a greater

8   opportunity to know and observe the patient as an individual."  Morgan v.

9   Commissioner of Social Security Administration, 169 F.3d 595, 600 (9th Cir.

10  1999) (citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987)).

11          The treating physician's opinion is not, however, necessarily conclusive as

12  to either a physical condition or the ultimate issue of disability.  Magallanes v.

13  Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citing Rodriguez v. Bowen, 876 F.2d

14  759, 761-62 & n.7 (9th Cir. 1989)).  Where a treating physician's opinion is not

15  contradicted by another doctor, it may be rejected only for clear and convincing

16  reasons.  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (citation and internal

17  quotations omitted).  The ALJ can reject the opinion of a treating physician in

18  favor of a conflicting opinion of another examining physician if the ALJ makes

19  findings setting forth specific, legitimate reasons for doing so that are based on

20  substantial evidence in the record.  Id.  (citation and internal quotations omitted);

21  Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002) (ALJ can meet burden by

22  setting out detailed and thorough summary of facts and conflicting clinical

23  evidence, stating his interpretation thereof, and making findings) (citations and

24  quotations omitted); Magallanes, 881 F.2d at 751, 755 (same; ALJ need not recite

25  "magic words" to  reject a treating physician opinion – court may draw specific

26

27          [3]Cf. Le v. Astrue, __ F.3d __, 2008 WL 2074355 *1 (9th Cir. May 16, 2008) (not
28  necessary or practical to draw bright line distinguishing treating physicians from non-treating
    physicians; relationship is better viewed as series of point on a continuum reflecting the duration
    of the treatment relationship and frequency and nature of the contact) (citation omitted).

and legitimate inferences from ALJ's opinion).  "The ALJ must do more than offer his conclusions."  Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988).  "He must set forth his own interpretations and explain why they, rather than the [physician's], are correct."  Id.  "Broad and vague" reasons for rejecting the treating physician's opinion do not suffice.  McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989).

If there is "substantial evidence" in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to "controlling weight."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  In that event, the ALJ is instructed to consider certain specified factors in determining the weight to accord the opinion of the treating physician.[4]  See 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6).  Even when contradicted by an opinion of an examining physician that constitutes substantial evidence, the treating physician's opinion is "still entitled to deference."  SSR 96-2p, Orn, 495 F.3d at 632.[5]  "In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight."  Orn, 495 F.3d at 632 (citation omitted).

**b.   Analysis**

One of plaintiff's treating physicians, neurologist Antoine Mitri, completed a Residual Functional Capacity Questionnaire on May 2, 2006 reflecting his opinion regarding limitations caused by plaintiff's mental impairments ("Dr. Mitri's RFC opinion").  (AR 281-85).  Plaintiff contends that the ALJ failed to set

---

[4]Those factors include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, and the "[n]ature and extent of the treatment relationship" between the patient and the treating physician.  20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), 416.927(d)(2)(i)-(ii).

[5]Orn instructs:  "When an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not 'substantial evidence.'"  Orn, 495 F.3d at 632.

1  forth legally sufficient reasons for rejecting such opinion.  (Plaintiff's Motion at 4)

2  (citing AR 20-21, 281-85).  The ALJ found that Dr. Mitri's RFC opinion was

3  contradicted by other medical reports in the record, including those of examining

4  physicians, Drs. Maze and Colonna.  (AR 21, 23).  As discussed below, the

5  reasons given by the ALJ for rejecting Dr. Mitri's RFC opinion are specific and

6  legitimate and are supported by substantial evidence in the record.  Thomas, 278

7  F.3d at 957.  (AR 20-21).  Although the Court discusses only the reasons

8  articulated below, it notes that the ALJ's extremely detailed decision is replete

9  with other references and reasons to discount Dr. Mitri's RFC opinion, all of

10  which constitute specific, legitimate, legally permissible reasons supported by

11  substantial evidence in the record.  (AR 20-23).

12       First, the ALJ rejected Dr. Mitri's RFC opinion regarding matters predating

13  March 2004 because, in light of the fact that he first examined plaintiff in March

14  2004, his only basis for offering opinions regarding plaintiff's condition prior to

15  that date were plaintiff's subjective complaints.  (AR 20).  The ALJ extensively

16  discussed plaintiff's lack of credibility throughout her decision and expressly gave

17  no weight to any assessment that relied on plaintiff's subjective complaints and

18  self-assessed limitations because her complaints and statements were not credible

19  – a finding plaintiff does not here challenge.  (AR 21).  A treating doctor's opinion

20  can be discounted if the opinion is based on a claimant's subjective complaints

21  which are unsupported or properly discredited by the ALJ.[6]  Bayliss v. Barnhart,

22  427 F.3d 1211, 1217 (9th Cir. 2005).  The record reflects that Dr. Mitri first

23  evaluated plaintiff on March 3, 2004.  (AR 178).  The record does not reflect that

24  Mitri consulted any prior medical records regarding plaintiff's mental

25  impairments.  (AR 178-80, 215-16, 281-85).  Accordingly, the ALJ's rejection of

26  _____

27       [6]As no objective clinical findings supported Dr. Mitri's RFC opinion (AR 281), it is
    reasonable to infer that he relied on plaintiff's subjective complaints more heavily than on his

28  own clinical observations.  See Ryan v. Commissioner of Social Security Administration, __
    F.3d __, 2008 WL 2440560 *4 (9th Cir. June 18, 2008).

1  Dr. Mitri's RFC opinion on the first articulated basis is supported by substantial

2  evidence and is free from legal error.

3        Second, the ALJ rejected Dr. Mitri's RFC opinion because said doctor did

4  not conduct a mental status examination or investigation into plaintiff's actual

5  memory, concentration, attention, cognitive or related deficits and how they

6  actually affect her functioning, and therefore, Dr. Mitri's only basis for opining

7  that plaintiff has a constant interference with concentration and attention is

8  plaintiff's assertion to that effect.  (AR 20).  As noted above, an ALJ may properly

9  reject a treating physician's opinion to the extent it is based solely on a claimant's

10  discredited subjective complaints.  An ALJ may also properly discount a treating

11  physician's opinion if it is not supported by objective medical findings.  See

12  Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195

13  (9th Cir. 2004).  Here, the record reflects that Dr. Mitri never performed a mental

14  status examination, ordered a mental status examination, or consulted mental

15  status examinations performed by others.  (AR 178-80, 215-16, 281-85).

16  Accordingly, the ALJ's second articulated reason for rejecting Dr. Mitri's RFC

17  opinion is legally permissible and is supported by substantial evidence in the

18  record.

19        Third, the ALJ rejected Dr. Mitri's RFC opinion based upon such

20  physician's admission that there are no objective findings.  (AR 20).  The ALJ

21  concluded that there therefore was "no objective basis of support for [Dr. Mitri's]

22  contention that [plaintiff] is limited to sedentary work."  (AR 20).  As noted

23  above, an ALJ may properly reject treating physician opinions that are

24  unsupported by objective medical findings.  Batson, 359 F.3d at 1195.  Here, Dr.

25  Mitri's RFC opinion reflects that "no objective findings" support his diagnoses.

26  (AR 281).  Therefore, the ALJ's third articulated reason for discrediting Dr.

27  Mitri's RFC opinion is legally permissible and is supported by substantial

28  evidence in the record.

1    Fourth, the ALJ rejected Dr. Mitri's RFC opinion because Dr. Mitri's

2    records show no foundation for his opinion that plaintiff would be absent from

3    work more than three times a month because of her impairments or treatments.

4    (AR 20, 285).  The only treatment ordered by Dr. Mitri was daily vitamin E

5    supplements, and there is no indication in the record that taking a daily oral

6    supplement would require missing work.  (AR 180, 216).  Also, as noted above,

7    there is no objective evidence supporting Dr. Mitri's listed limitations.  An ALJ

8    may properly discredit treating physician opinions that are not supported by the

9    record or by objective medical findings.  Batson, 359 F.3d at 1195.  Therefore, the

10   ALJ's fourth reason for discrediting Dr. Mitri's opinion is legally permissible and

11   is supported by substantial evidence in the record.

12   Fifth, the ALJ noted that Dr. Mitri's records provide no foundation or basis

13   for Dr. Mitri's RFC opinion that plaintiff is unable to withstand any work stress.

14   (AR 20, 282-83).  As noted above, Dr. Mitri's RFC opinion reflects that no

15   objective findings support his diagnoses therein.  Nor do Dr. Mitri's treatment

16   records support this conclusion.  (AR 178-80, 215-16, 281-85).  See Connett v.

17   Barnhart, 340 F.3d 871, 875 (9th Cir. 2003) (treating physician's opinion properly

18   rejected where treating physician's treatment notes "provide no basis for the

19   functional restrictions he opined should be imposed on [the claimant]").  Further,

20   as the ALJ discussed, Dr. Mitri's RFC opinion in this regard is inconsistent with

21   plaintiff's conduct, as plaintiff returned to work and was able to perform her job

22   properly despite work pressure.  (AR 20).  The ALJ's fifth articulated reason for

23   rejecting Dr. Mitri's RFC opinion is supported by substantial evidence and is free

24   from legal error.

25   Sixth, the ALJ discounted Dr. Mitri's opinion because of internal

26   inconsistencies in his documentation, suggesting that he is not always an accurate

27   reporter of information.  (AR 20).  More specifically, the ALJ noted that although

28   Dr. Mitri's consultation letter reflects that plaintiff's EEG is abnormal, his official

11

1    test report said that it was within normal limits. (AR 20). The record supports the

2    ALJ's finding regarding the inconsistencies in such documentation. On March 24,

3    2004, Dr. Mitri conducted an electroencephalogram exam on plaintiff, which Dr.

4    Mitri concluded was "within normal limits." (AR 177). On May 15, 2004,

5    however, Dr. Mitri noted in a report that plaintiff "had an abnormal

6    electroencephalogram." (AR 215). Variances between a physician's opinion and

7    own treatment notes may be used to deem the opinion untrustworthy. Saelee v.

8    Chater, 94 F.3d 520, 522-23 (9th Cir. 1996), cert. denied, 1997). Therefore, the

9    ALJ's sixth reason for discrediting Dr. Mitri's opinion is legally permissible and is

10   supported by substantial evidence in the record.

11        As the discussion above reflects, the ALJ had ample specific and legitimate

12   reasons to reject the opinion of the treating physician which were based on

13   substantial evidence in the record. Thomas, 278 F.3d at 957. Therefore, the Court

14   rejects plaintiff's claim that the ALJ improperly rejected such opinions in her

15   assessment of plaintiff's residual functional capacity.

16        **2.     The ALJ Did Not Materially Err in Her Consideration of**

17        **One of the State Agency's Physician's Opinions**

18        Plaintiff contends that the ALJ's decision cannot "withstand judicial

19   scrutiny" because it is "silent as to the opinions of Dr. Ferrell, a state agency

20   reviewing physician." (Plaintiff's Motion at 5). More specifically, plaintiff

21   contends that the ALJ ignored Dr. Ferrell's opinion that plaintiff would have

22   "moderate difficulties in maintaining concentration, persistence, and pace."

23   (Plaintiff's Motion at 5-6) (citing AR 233-46). The Court finds that any error by

24   the ALJ in failing expressly to mention Dr. Ferrell was harmless.

25        **a.     Pertinent Law**

26        An ALJ is not bound by any findings by a state agency medical or

27   psychological consultant. 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

28   However, because these agency physicians and psychological consultants are

1    highly qualified and are also experts in Social Security disability evaluations, the

2    ALJ "must consider" findings of an agency physician.  20 C.F.R.

3    §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  When the ALJ considers the findings of a

4    state agency medical or psychological consultant, the ALJ evaluates the findings

5    using factors such as medical specialty and expertise in social security rules,

6    supporting evidence in the case record, supporting explanations provided by the

7    physician or psychologist, and any other factors relevant to the weighing of the

8    opinions.  20 C.F.R. §§ 404.1527(f)(2)(ii), 416.927(f)(2)(i).  Furthermore, the ALJ

9    "must explain in the decision" the weight given to the agency physician's opinion.

10   See SSR 96-6p (ALJ may not ignore state agency physician's opinions and must

11   explain weight given to such opinions in their decisions).

12       Although an ALJ's failure to adhere to such procedures may be a sufficient

13   ground for reversal or remand, such error may be harmless if the ALJ's opinion is

14   nonetheless supported by substantial evidence.  See Patrick v. Barnhart, 2004 WL

15   1618815, *8 (W.D. Tex.) (failure to discuss agency physician's opinion was error

16   but was not prejudicial because opinion supported ALJ's decision and was

17   consistent with claimant's testimony and substantial evidence of record).

18                   **b.    Pertinent Facts**

19       Dr. Ferrell, a state agency reviewing psychiatrist, completed a Psychiatric

20   Review Technique ("PRT") on November 3, 2004.  (AR 233-45) (Exhibit 7F).  In

21   the PRT, Dr. Ferrell checked a box indicating that plaintiff would have a moderate

22   degree of difficulty in maintaining concentration, persistence or pace due to her

23   functional limitations.  (AR 243).  In a section for notes, Dr. Ferrell indicates that

24   plaintiff has no significant impairment.  (AR 245).

25       Dr. Ferrell also completed a Mental Residual Functional Capacity

26   Assessment ("MRFC") on November 3, 2004.  (AR 247-50) (Exhibit 8F).  In the

27   "summary conclusions" section of the MRFC, Dr. Ferrell checked boxes

28   indicating plaintiff was "moderately limited" in her ability to:  (1) understand and

13

1    remember detailed instructions; (2) carry out detailed instructions; (3) maintain

2    attention and concentration for extended periods; and (4) perform activities within

3    a schedule, maintain regular attendance, and be punctual within customary

4    tolerances.  (AR 247).  However, Dr. Ferrell also checked boxes indicating

5    plaintiff was not significantly limited in her ability to:  (1) understand and

6    remember very short and simple instructions; (2) carry out very short and simple

7    instructions; (3) sustain an ordinary routine without special supervision; (4) work

8    in coordination with or proximity to others without being distracted by them;

9    (5) make simple work-related decisions; (6) complete a normal workday and

10   workweek without interruptions from psychologically based symptoms and to

11   perform at a consistent pace without an unreasonable number and length of rest

12   periods; (7) accept instructions and respond appropriately to criticism from

13   supervisors; (8) get along with coworkers or peers without distracting them or

14   exhibiting behavioral extremes; and (9) respond appropriately to changes in the

15   work setting.  (AR 247-48).  In addition, in the "functional capacity assessment"

16   section of the MRFC, Dr. Ferrell wrote that plaintiff was capable of simple,

17   repetitive one to two step tasks.  (AR 249).

18        In her decision, the ALJ did not mention Dr. Ferrell by name.  She did,

19   however, refer to Dr. Ferrell's PRT and MRFC, and Dr. Ferrell's opinion.  (AR 23,

20   27, 29) (citing Exhibits 7-F, 8-F).  First, as to Dr. Ferrell's PRT, the ALJ cited

21   such document in support of her finding that plaintiff could mentally understand,

22   carry out and remember short and simplistic instructions, make simplistic work-

23   related decisions without special supervision, and interact appropriately with

24   supervision, co-workers and peers.  (AR 23) (citing Exhibit 8-F).  She also

25   referred to "state agency psychiatric consultants" and cited the PRT in discussing a

26   hypothetical question posed to the vocational expert.  (AR 27) (citing Exhibit 8-F).

27        Second, as to Dr. Ferrell's opinion that plaintiff had moderate difficulties in

28   maintaining concentration, persistence or pace, the ALJ adopted such finding,

14

referring to assessments from "consulting doctors." (AR 23). The ALJ also expressly referred to the "state agency psychiatric consultant['s]" MRFC and the opinion therein that plaintiff suffered from "'moderate' difficulties in maintaining concentration, persistence or pace" in discussing a hypothetical question posed to the vocational expert by plaintiff's counsel. (AR 29) (citing Exhibit 7-F).

As noted above, the ALJ ultimately determined that plaintiff had the residual functional capacity to "mentally understand, carry out and remember short and simplistic instructions, make simplistic work-related decisions without special supervision, and interact appropriately with supervision, co-workers and peers." (AR 32).

### c.   Analysis

Here, although the ALJ does not refer to Dr. Ferrell by name, it is clear from the foregoing that the ALJ reviewed and considered Dr. Ferrell's opinion, and expressly adopted his opinion that plaintiff had moderate difficulties in maintaining concentration, persistence or pace. (AR 23). Even assuming, however, that the ALJ was required to mention such physician by name and to discuss further such opinion, any error was harmless.

First, as described above, Dr. Ferrell checked boxes indicating that plaintiff had moderate mental limitations with detailed instructions, but wrote that plaintiff was able to complete simple, repetitive one to two step tasks. These observations do not contradict the ALJ's determination that plaintiff could understand, carry out and remember simple instructions.

Second, Dr. Ferrell agreed with the ALJ's determination that plaintiff could "make simplistic work-related decisions without special supervision, and interact appropriately with supervision, co-workers and peers." (AR 32, 247-48).

Third, in addition to checking boxes indicating that plaintiff would have moderate difficulties maintaining attention and concentration for extended periods, performing tasks within schedule, maintaining regular attendance, and

being punctual within customary tolerances, Dr. Ferrell also checked a box indicating plaintiff was not significantly limited in her ability to "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods" and wrote that plaintiff had no significant mental impairment. These opinions are consistent with the ALJ's residual functional capacity assessment.

Finally, as discussed above, the ALJ's residual functional capacity determination is supported by substantial evidence in the record.

Therefore, the Court concludes that any error by the ALJ in failing further to address Dr. Ferrell's opinion was harmless.

### 3. The ALJ Properly Rejected Plaintiff's Offered Definition of "Moderate" Limitations

Plaintiff argues the ALJ erred by not concluding that a "moderate" impairment is an impairment that occurs up to one third of the time. (Plaintiff's Motion at 6-7). Plaintiff contends that the "Third Circuit has held that the definition of moderately limited in the context of a hearing before the Social Security Administration means that the claimant is unable to perform the task up to a third of the time," citing <u>Morales v. Apfel</u>, 225 F.3d 310, 314 n.4 (3rd Cir. 2000), and urges the Court to adopt this alleged holding. (Plaintiff's Motion at 7). Plaintiff further argues that because of this alleged error, the ALJ's residual functional capacity determination was also in error. (Plaintiff's Motion at 6-7). Plaintiff's argument is unpersuasive.

#### a. Pertinent Facts

During cross-examination of the vocational expert near the end of the June 29, 2006 hearing, plaintiff's counsel posed a hypothetical question about an individual with "[m]oderate difficulties in maintaining concentration, persistence, or pace." (AR 377-78). Plaintiff's counsel defined moderate as "occurring up to

16

1   one third of the time the person would not be able to maintain concentration, be

2   persistent, or keep pace." (AR 378).  Based on that definition, the vocational

3   expert testified that such a person would be unable to perform any type of work.

4   (AR 378).

5          After plaintiff's counsel finished questioning the vocational expert, the ALJ

6   asked plaintiff's counsel about the one third definition of moderate.  (AR 378-79).

7   Plaintiff's counsel stated that the government did not define moderate but that

8   "there is case law that has found that one third and moderate are consistent." (AR

9   379).  Plaintiff's counsel acknowledged that the referenced case law was from the

10  Third Circuit and therefore only persuasive, and that the Ninth Circuit had not

11  adopted the Third Circuit's alleged holding.  (AR 379-80).

12         The ALJ recounted this discussion in the decision, noting that plaintiff's

13  counsel did not explain on what basis or provide evidence to support that a

14  moderate limitation meant that a person would not be able to concentrate, or

15  maintain persistence and pace for 1/3 of the time.  (AR 29).  The ALJ appears to

16  have rejected such definition.  (AR 31).

17                        **b.     Analysis**

18         Plaintiff's contention regarding the definition of "moderate" is unsupported

19  by the record and is unpersuasive.  As plaintiff has conceded, federal regulations

20  do not define the term  "moderate" with regards to limitations.  (AR 379).  Nor

21  does Morales do so.  Rather, in Morales, the court merely noted that a vocational

22  expert at the administrative hearing in issue himself/herself defined "moderately

23  limited" to mean that the claimant therein was unable to perform a task up to a

24  third of the time.  Morales, 225 F.3d at 314 n.4.  The Morales court did not purport

25  to adopt or approve of such definition.  Moreover, plaintiff fails to demonstrate

26  that any doctor who offered opinions regarding plaintiff's condition or functional

27  limitations defined the term "moderate" in this fashion.  Accordingly, the ALJ did

28  not err in rejecting plaintiff's proffered definition of such term.

                                    17

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   July 7, 2008

_____/s/_____
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

18